LUCY L. COGGESHALL *vs.* CLARENCE DAVIS, *Ex.*

JUNE 26, 1928.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

RATHBUN, J.   This case was heard in the Superior Court
on an appeal from a decree of the probate court of the town
of Bristol admitting to probate an instrument purporting
to be the last will and testament of John R. Potter.   The
verdict of the jury was that the instrument was not the will
of said Potter.   The case is before us on exceptions taken
by the executor as follows:   To the admission and exclusion
of evidence and to the denial by the trial justice of the
executor's motion for a new trial.

John R. Potter, hereinafter referred to as the testator,
owned and occupied a small summer home on the water
front in the town of Bristol.   A few days before the will was
executed he left this home in the care of his housekeeper and
went to a hospital to undergo an operation.   He expected to
return within a few weeks.   Three or four days after the
operation was performed, apparently appreciating the fact
that his condition was serious, he directed his housekeeper
to send for Elizabeth Lake, for whom he had done some
carpenter work, to write his will.   When Miss Lake arrived
she told him that she was not competent to draft a will;
and he then directed her to send for a lawyer.   By telephone
she requested Arthur P. Johnson, Esq., a practicing attor-
ney, to come to the hospital.   Pending his arrival she made
a memoranda as to the disposition which the testator
wished to make of his property.   One of the items in the
memoranda was the statement that the testator desired to
leave a legacy of either two or three hundred dollars to her.
When the attorney arrived he was given the memoranda.
The testator being very deaf, Miss Lake assisted the attorney
in obtaining from the testator the full names of the different
beneficiaries.   She told the testator in the presence of wit-
nesses that it was unnecessary to make any provision for
her as she did not desire compensation for the small services
which she had rendered.   She departed before the will was
written.   According to the testimony of the attorney, the

testator told him to make the legacy to Miss Lake $300. The will further purported to give $500 to the testator's housekeeper; $10 to his daughter, the contestant of the will; his power boat, rowboat and gun to a friend; his real estate and tools to one nephew and the residue to another nephew. The probable value of his estate, including real estate, was between $3,000 and $4,000.

It is not denied that the testator had an intense hatred for his daughter's husband. The daughter was in Florida afflicted with tuberculosis. The testator expected she would live but a short time. There was an abundance of testimony that the testator had stated long before the will was made, as well as at that time, that the son-in-law and his children would receive none of the testator's property. The rescript of the trial justice contains the following: "The will is an unnatural will. It is not usual for a father to cut off his only child, or the children of that child of whom he was fond, for such a reason as given by Miss Lake or the other witnesses for the appellee. Taking into consideration all the circumstances surrounding the last illness and death of Mr. Potter, the jury might reasonably decide that this instrument expresses the wishes and desires of Elizabeth Lake rather than of John R. Potter."

The testator may have had some affection for his daughter but if he believed that she would live but a short time, and he had a strong hatred for her husband, which was not denied, the will cannot be considered unnatural. He had no other children and his wife had deceased.

The trial justice approved the verdict on the ground that the will was obtained by undue influence practiced upon the testator by Elizabeth Lake. The only evidence tending to support such finding was that Miss Lake prepared the memoranda, sent for the attorney and was given a legacy of $300. There was little motive for securing a will giving only $300 to herself and the bulk of the estate to persons in no way connected with her. The opportunity which usually exists in such cases for exercising undue influence was

wanting. She was not one of the nurses who cared for him. During the brief time which she spent with the testator at the hospital she had little opportunity for overcoming the mind of a deaf man without attracting the attention and suspicion of the nurses, in charge of the case, and other persons. It is not contended that Miss Lake exercised undue influence over the testator before he went to the hospital.

The 3rd exception is to the admission of the contents of a portion of a letter purporting to have been written by the testator's daughter in Florida to Edward P. Gladding. The language read to the jury was as follows: "Interlachen, Florida, December 16, 1927. Dear Cousin Ned: Well at last I am able to sit up long enough to answer your letter. I am in bed with pillows to hold me up, so please excuse this writing. I am lucky to be alive, the doctor says. I don't know what the matter was, but it was some kind of fever. My temp. has been from 102 to 104 steady until last Sunday it started to drop and hasn't got exactly O. K. yet."

The language read to the jury was apparently introduced for the avowed purpose of accounting for the daughter's absence from the trial. The evidence was hearsay and was for that reason inadmissible. The natural effect of such a letter would be to arouse the sympathy of the jury for the daughter whose legacy in the will was only $10. We cannot say that the evidence was not prejudicial. The 3rd exception is sustained. As the case must be tried again it is unnecessary to consider the exception to the refusal of the trial justice to grant a new trial.

All of the remaining exceptions are overruled and the case is remitted to the Superior Court for a new trial.

STEARNS, J., dissents.

*E. Raymond Walsh*, for appellant.
*Arthur P. Johnson*, for appellee.